IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

EL-AMIN BASHIR,

　　　　　　　　Defendant.

CRIMINAL ACTION
NO. 14-284-2

## OPINION

**Slomsky, J.**　　　　　　　　　　　　　　　　　　**March 5, 2025**

### Table of Contents

I.　INTRODUCTION ................................................................................................. 3

II.　BACKGROUND ................................................................................................. 4

　A.　**Factual Background** ................................................................................ 4

　B.　**Procedural Background** ......................................................................... 6

　　1.　First Motion for Compassionate Release ............................................. 8

　　2.　Second Motion for Compassionate Release .......................................... 8

　　3.　Third Motion for Compassionate Release ............................................ 8

　　4.　Fourth Motion for Compassionate Release .......................................... 9

　　5.　Fifth Motion for Compassionate Release ............................................ 9

III.　STANDARD OF REVIEW ............................................................................... 9

IV.　DISCUSSION ................................................................................................... 15

　A.　**Defendant's Motions for Compassionate Release Will Be Denied** ............ 15

　　1.　Defendant Has Exhausted His Administrative Remedies ........................ 15

　　2.　Defendant Has Not Established an Extraordinary and Compelling Reason
　　　for His Release ................................................................................... 15

       a.   Defendant's Medical Circumstances Do Not Warrant a Reduction
to His Sentence ........................................................................................ 16

       b.   Defendant's Sentence is Not "Unusually Long" ........................................ 18

       c.   Defendant's Change in Family Circumstances Do Not Warrant
a Reduction to His Sentence ...................................................................... 21

       d.   Defendant's Rehabilitation Does Not Warrant a Reduction to His Sentence ............ 22

    3.   Section 3553(a) Sentencing Factors Weigh Against a Reduction
to Defendant's Sentence .................................................................................. 22

**B.  Defendant's Motion for Appointment of Counsel Will Be Denied** ............................. 24

**V.  CONCLUSION** ............................................................................................................. 25

## I.     INTRODUCTION

Before the Court are several Motions filed pro se by Defendant El-Amin Bashir ("Defendant"), including five (5) Motions for Compassion Release (Doc. Nos. 299, 301, 327, 335, 338) and a Motion for Appointment of Counsel (Doc. No. 334).[1]  Defendant, age 54, is currently serving a total term of imprisonment of 264 months:  he received a sentence of imprisonment of 240 months on an underlying drug trafficking offense and a consecutive term of 24 months for violating supervised release.  (Doc. No. 339 at 1.)

Defendant filed the Motions for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), which allows a court to "modify a term of imprisonment" if, among other reasons, "extraordinary and compelling reasons warrant such a reduction."[2]  (See Doc. Nos. 299, 301, 327, 335, 338.)  In his Motions, Defendant requests the Court to reduce his sentence "to time served, with the remaining period of home confinement as a condition of release."  (Doc. No. 299-

---

[1]   While Defendant has filed these Motions pro se, several of the Motions and Replies were prepared by attorneys hired by Defendant.

[2]   Section 3582(c)(1)(A)(i) provides, in part, that:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

1 at 4.)  But, for reasons that follow, Defendant's Motions for Compassionate Release (Doc. Nos. 299, 301, 327, 335, 338) will be denied, and his Motion for Appointment of Counsel (Doc. No. 334) will also be denied.

## II.    BACKGROUND

### A.    Factual Background

The Government summarizes the facts of Defendant's underlying criminal conviction and sentence as follows:

> Less than two years after the defendant's release from federal prison for conspiracy to possess with intent to distribute cocaine and attempting to possess with intent to distribute cocaine . . . and while on supervised release for these offenses, Bashir became the subject of the instant case and his second federal prosecution when he conspired to possess approximately 25 kilograms of cocaine with intent to distribute between April and May of 2014.
>
> During that time, Bashir and his co-conspirators met with two [United States Drug Enforcement Agency ("DEA")] confidential sources on multiple occasions in both Philadelphia and Arizona to arrange for the delivery of 25 kilograms of cocaine in exchange for $700,000. During one such meeting in an Arizona warehouse, the informant (CS) brought three sample kilograms of cocaine to show Bashir and his associates. All three kilograms were cut open so that Bashir and his co-defendants could view the cocaine inside. Bashir and his associates discussed which of the three samples they preferred, and further discussed the details of the transaction with the CS. After leaving the warehouse, the defendants and the CS drove to various locations in order to purchase prepaid cellular phones to facilitate communication between the parties.
>
> In May of 2014, two of Bashir's co-conspirators flew to Phoenix to deliver a $25,000 down payment for the drugs to the CS along with a business card listing the location in Philadelphia where the defendants wanted to receive the cocaine.
>
> On May 30, 2014, the CS came to Philadelphia, in advance of the purported cocaine delivery, to collect a larger down payment. The CS met with Bashir's coconspirator [sic] at a Philadelphia restaurant, who showed the CS a large sum of money in his car and acknowledged more money in a second vehicle driven by another associate. At that time, agents arrested both co-conspirators, and recovered over $200,000 in cash from them.
>
> On June 4, 2014, a grand jury sitting in the Eastern District of Pennsylvania returned a one-count indictment charging Bashir and his co-conspirators with conspiracy to possess five kilograms or more of cocaine with intent to distribute, in

violation of 21 U.S.C. § 846. On April 14, 2015, Bashir was found guilty by a jury on the sole count in the Indictment. On January 6, 2016, this Court imposed a sentence of imprisonment of 240 months (the mandatory minimum) [as well as a consecutive 24-month term of imprisonment for violating his supervised release], a ten-year period of supervised release, a $5,000 fine, and a $100 special assessment.

For sentencing purposes, Bashir was deemed a career offender based on his prior convictions for crimes of violence and/or controlled substance offenses. At the time of this offense, Bashir was no stranger to conspiring to commit drug offenses, as he was on federal supervised release after serving a prison sentence for this very crime. As charged (and convicted) in the Middle District of Florida . . . Bashir engaged in a serious of phone calls with his co-conspirator and a confidential source to facilitate the purchase of ten kilograms of cocaine in exchange for $150,000. At the scene of the purported transaction, Bashir and his co-conspirator requested that the transaction occur in a more private setting. When they left the public location, they were arrested. After a jury found him guilty, Bashir was sentenced to 142 months' imprisonment on each count to run concurrently, followed by a 72-month period of supervised release. At the time that Bashir committed this offense in the Middle District of Florida, he was on parole after serving a four-year prison sentence for another drug case originating in Somerset County, New Jersey.

(Doc. No. 306 at 1-4 (internal citations omitted).)

As of February 2025, Defendant has served approximately 128 months of his 264-month sentence. (See Doc. No. 339 at 2.) When Defendant filed his first and second Motions for Compassionate Release, he was serving his sentence at the Federal Medical Center in Devens, Massachusetts ("FMC Devens"). (Doc. No. 299-1 at 6.) But when he filed his third, fourth, and fifth Motions for Compassionate Release, he was serving his sentence at the Federal Correctional Complex in Butner, North Carolina ("FCC Butner"). (Doc. No. 327 at 1.)

**B.      Procedural Background**

Since January 2021, Defendant has filed five (5) <u>pro se</u> Motions for Compassionate Release under 18 U.S.C. § 3582(C)(1)(A)(1).[3]  (<u>See</u> Doc. Nos. 299, 301, 327, 335, 338.)  On January 17, 2024, Defendant also filed a Motion for Appointment of Counsel.  (Doc. No. 334.)  The Government has filed several responses to Defendant's Motions.  (<u>See</u> Doc. Nos. 306, 312, 317, 329, 339, 344.)

Specifically, on January 12, 2021, Defendant filed his first Motion for Compassionate Release and one week later, on January 19, 2021, he filed a second Motion for Compassionate Release.[4]  (Doc. Nos. 299, 301.)  On February 8, 2021, the Government filed a Response in Opposition.  (Doc. No. 306.)  On July 26, 2021, the Government filed a Supplemental Response

---

[3]    As explained further below, 18 U.S.C. § 3582(C)(1)(A)(1) allows a court to modify a term of imprisonment if it finds, among other factors, that the defendant has presented "extraordinary and compelling reasons" for such modification.  <u>See</u> 18 U.S.C. § 3582(C)(1)(A)(1)(i).

Here, in his various Motions for Compassionate Release, Defendant proffers several reasons he claims are extraordinary and compelling reasons warranting a reduction to his sentence, such as his medical circumstances, family circumstances, unusually long sentence, and rehabilitation.  (<u>See</u> Doc. Nos. 299, 301, 327, 335, 338.)  He also asserts numerous claims resulting from his alleged mistreatment by the Federal Bureau of Prisons ("BOP"), including the alleged mishandling of his mail, denial of access to his attorneys, and other allegations concerning the conditions of his confinement.  (<u>See</u> <u>generally</u> <u>id.</u>)  But these allegations regarding the BOP's treatment of Defendant are not proper grounds for compassionate release.  <u>See</u>, <u>e.g.</u>, <u>United States v. Martinez</u>, No. 17-468-1, 2022 WL 3448635, at *3 (E.D. Pa. Aug. 17, 2022) ("[A]n inmate's claim that [a] specific facility's response to COVID-19 is inadequate does not constitute an 'extraordinary and compelling' reason for his release. Instead, such a claim is more properly an unconstitutional conditions of confinement claim, for which 42 U.S.C. § 1983 is the proper vehicle.")  As such, the Court will focus its analysis on Defendant's medical circumstances, family circumstances, unusually long sentence arguments, and rehabilitation.

[4]    Due to an error in the Court's filing system, Defendant's first and second Motions for Compassionate Release were not flagged as pending motions and, as such, went unnoticed until Defendant filed his third Motion for Compassionate Release in July 2023.  Despite this delay, the Court will consider the merits of all the Motions now.

in Opposition.  (Doc. No. 312.)  On January 13, 2022, Defendant, through counsel, filed a Reply to the Government's Supplemental Response.  (Doc. No. 316.)  On January 18, 2022, the Government filed a Second Supplemental Response.  (Doc. No. 317.)

On July 25, 2023, Defendant filed a third Motion for Compassionate Release.  (Doc. No. 327.)  On the same day, the Government filed a Response in Opposition.  (Doc. No. 329.)  On February 15, 2024, Defendant filed a fourth Motion for Compassionate Release.  (Doc. No. 335.)  On October 15, 2024, Defendant filed a fifth Motion for Compassionate Release.  (Doc. No. 338.)  On October 22, 2024, the Government filed a Response in Opposition, noting that in his fifth Motion for Compassionate Release, Defendant raised a similar issue as those raised in United States v. Carter, No. 24-1115, and United States v. Rutherford, No. 23-1904, which were pending before the Third Circuit Court of Appeals.  (Doc. No. 339.)  Due to the pending appeals, on October 31, 2024, the Court stayed Defendant's Motions for Compassionate Release pending the resolution of Carter and Rutherford.  (Doc. No. 343.)

On November 1, 2024, the Third Circuit released its decision in Rutherford.  See United States v. Rutherford, 120 F.4th 360 (3d Cir. 2024).  On November 29, 2024, the Government filed a Supplemental Response in light of the Rutherford decision.  (Doc. No. 344.)  On December 2, 2024, the Third Circuit made its final decision in Carter.  See United States v. Carter, No. 24-1115, 2024 WL 5339852 (3d Cir. Dec. 2, 2024).  As such, Defendant's Motions for Compassionate Release, as well as his Motion for Appointment of Counsel, are now ripe for disposition.  But because Defendant's arguments in favor of compassionate release vary in each of his Motions, the Court will first summarize each Motion's arguments.

### 1.     First Motion for Compassionate Release

On January 12, 2021, Defendant filed his first <u>pro se</u> Motion for Compassionate Release.[5] (Doc. No. 299.)  In this Motion, Defendant requests that the Court reduce his sentence based on the extraordinary and compelling reason of Defendant's risk for serious illness due to the COVID-19 pandemic and Defendant's underlying health conditions.  (Doc. No. 299-1 at 4.)  Defendant reports that he has the following health conditions:  "chronic pulmonary venous embolism thrombosis condition, chronic diabetes, heart disease, [and] pre-hypertension."  (<u>Id.</u>)

### 2.     Second Motion for Compassionate Release

On January 19, 2021, Defendant filed a second Motion for Compassionate Release.  (Doc. No. 301.)  In this Motion, he proffers the same arguments put forth in his first Motion, namely his risk for serious illness if he were to contract COVID-19 due to his underlying medical conditions.  (<u>See</u> <u>generally</u> <u>id.</u>)

### 3.     Third Motion for Compassionate Release

On July 25, 2023, Defendant filed a third Motion for Compassionate Release.  (Doc. No. 327.)  In it, he not only reiterates the argument about his medical conditions, but also asserts two new reasons supporting his release:  (1) his unusually long sentence, specifically the large disparity between the 240-month sentence he received when he was sentenced in 2016 and the 168 to 210-month sentence he would qualify for if sentenced today due to a change in the law; and (2) a change in his family circumstances, namely his wife's Bell's Palsy diagnosis.  (<u>Id.</u> at 2.)

---

[5]  In this first Motion for Compassionate Release, Defendant also makes an informal request for the appointment of counsel.  (<u>See</u> Doc. No. 299 at 1.)  This request will be denied for the same reasons that the Court will deny, <u>infra</u>, Defendant's formal Motion to Appoint Counsel (Doc. No. 334).

### 4.    Fourth Motion for Compassionate Release

On February 15, 2024, Defendant filed a fourth Motion for Compassionate Release (Doc. No. 335) in which he makes substantially the same arguments as those made in his third Motion for Compassionate Release (Doc. No. 327) but also adds his rehabilitation as an extraordinary and compelling reason for his release.  (See Doc. No. 335 at 19-21.)  He also argues that the 18 U.S.C. § 3553(a) factors support his release, asserting, among other arguments, that he is not a danger to the community.[6]  (Id. at 22.)

### 5.    Fifth Motion for Compassionate Release

Finally, on October 17, 2024, Defendant filed a fifth Motion for Compassionate Release. (Doc. No. 338.)  In this Motion, Defendant simply reiterates the arguments made in his prior Motions for Compassionate Release.  (See generally id.)

## III.    STANDARD OF REVIEW

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c).  There are, however, "a few narrow exceptions" to this general "rule of finality[,]" including the compassionate release statute 18 U.S.C. § 3582(c)(1)(A). Freeman v. United States, 564 U.S. 522, 526 (2011).  As amended by the First Step Act, Section 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies if, among other reasons, the

---

[6]    As discussed below, the Third Circuit has held that "if a court finds that [extraordinary and compelling reasons] exist, it then turns to the sentencing factors in 18 U.S.C. § 3553(a) to determine whether compassionate release is appropriate."  United States v. Stewart, No. 22-2770, 2023 WL 7509457, at *1 (3d Cir. Nov. 14, 2023).

defendant has provided "extraordinary and compelling reasons [for] such a reduction."[7]  See 18 U.S.C. § 3582(c)(1)(A).

Congress, however, has not specifically defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason.  28 U.S.C. § 994(t).  Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission.  In this regard, Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

---

[7]  Section 3582(c)(1)(A) provides, in part, that:

> [T]he Court, upon Motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

U.S.S.G. § 1B1.13(a)(1)-(3).  Under Section 1B1.13(b), "extraordinary and compelling reasons"

exist under any of the following circumstances or a combination thereof:

(1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT. —

    (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (B) The defendant is—

        (i)   suffering from a serious physical or mental condition,

        (ii)  suffering from a serious functional or cognitive impairment, or

        (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided without which the defendant is at risk of serious deterioration in health or death.

    (D) The defendant presents the following circumstances—

        (i)   the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

        (ii)  due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

        (iii) such risk cannot be adequately mitigated in a timely manner.

(2) AGE OF THE DEFENDANT. —The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the

aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(3) FAMILY CIRCUMSTANCES OF THE DEFENDANT. —

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family members or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual.  For purposes of his provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

(4) VICTIM OF ABUSE. — The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

(A) sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

(B) physical abuse resulting in "serious bodily injury," as defined in the Commentary to §1B1.1 (Application Instructions); that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

(5) OTHER REASONS. — The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together

with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) UNUSUALLY LONG SENTENCE. — If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13 (b)(1)-(6) (Nov. 1, 2023).

Further, Section 1B1.13(c) delineates the limitations to the policy exception regarding changes in law:

(C) LIMITATION ON CHANGES IN LAW. — Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

U.S.S.G. § 1B1.13(c) (Nov. 1, 2023).

The Third Circuit has noted that "if a court finds that [extraordinary and compelling reasons] exist, it then turns to the sentencing factors in 18 U.S.C. § 3553(a) to determine whether compassionate release is appropriate." United States v. Stewart, No. 22-2770, 2023 WL 7509457, at *1 (3d Cir. Nov. 14, 2023). Section 3553(a) sets forth factors for a court to consider when imposing a sentence.[8] If on balance, a defendant's extraordinary and compelling reasons combined

---

[8] The factors set forth by § 3553(a) are as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with the applicable policy statement of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

---

      (2) the need for the sentence imposed—
          (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
          (B) to afford adequate deterrence to criminal conduct;
          (C) to protect the public from further crimes of the defendant; and
          (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
      (3) the kinds of sentences available;
      (4) the kinds of sentence and the sentencing range established for—
          (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
              (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
              (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
          (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
      (5) any pertinent policy statement—
          (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
          (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
      (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
      (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

IV.    **DISCUSSION**

A.    **Defendant's Motions for Compassionate Release Will Be Denied**

1.    **Defendant Has Exhausted His Administrative Remedies**

As mentioned above, a court may only modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies.  <u>See</u> 18 U.S.C. § 3582(c)(1)(A).  If a defendant submits a request for compassionate release to his facility's warden and the warden does not respond within thirty (30) days, the defendant's administrative remedies are deemed exhausted.  <u>See</u> <u>id.</u>

Here, Defendant submitted three requests for compassionate release to the warden at FMC Devens, the facility at which Defendant was incarcerated in January 2021 when he submitted his first Motion for Compassionate Release.  (Doc. No. 299-1.)  The requests were dated March 28, 2020, April 17, 2020, and May 12, 2020.  (<u>Id.</u>)  As of January 12, 2021, the date Defendant filed his first Motion for Compassionate Release, the warden had not responded to any of Defendant's three requests.  (<u>Id.</u>)  Because more than thirty (30) days passed without a response from the warden, Defendant's administrative remedies are deemed exhausted.

2.    **Defendant Has Not <span style="color:red">Established</span> an Extraordinary and Compelling Reason for His Release**

As detailed above, Defendant has filed five (5) Motions for Compassionate Release in which he asserts the following reasons are extraordinary and compelling reasons justifying a reduction to his sentence:  (1) his medical circumstances, (2) his unusually long sentence, (3) a change in his family circumstances, and (4) his rehabilitation.  (<u>See</u> Doc. Nos. 299, 301, 327, 335, 338.)  But, for reasons explained below, none of these reasons are extraordinary and compelling as to warrant a reduction to Defendant's sentence.

a.      **Defendant's Medical Circumstances Do Not Warrant a
         Reduction to His Sentence**

First, Defendant argues that his high risk of serious illness in light of the COVID-19
pandemic and his underlying health conditions are extraordinary and compelling reasons to reduce
his sentence under § 1B1.13(b)(1).  (Doc. No. 299-1 at 4.)  Defendant's Federal Bureau of Prisons
("BOP") health records reveal he has the following health conditions:   chronic deep vein
thrombosis, diabetes, obesity, and hyperlipidemia (high blood cholesterol).  (See Doc. No. 306 at
4.)  The Government acknowledged that Defendant's diabetes and obesity are health conditions
that have been identified by the Centers for Disease Control and Prevention as increasing the risk
of an adverse outcome from COVID-19, making Defendant eligible for consideration for
compassionate release.  (Id. at 13.)  But the Government also noted that Defendant refused to
receive the COVID-19 vaccine when offered.  (Doc. No. 312 at 4.)

The Third Circuit Court of Appeals has held that "the mere existence of COVID-19 in
society and the possibility that it may spread to a particular prison alone cannot independently
justify compassionate release, especially considering BOP's statutory role, and its extensive and
professional efforts to curtail the virus's spread."  United States v. Raia, 954 F.3d 594, 597 (3d Cir.
2020).  Moreover, "District Courts in the Third Circuit consistently agree that an FDA-approved
vaccination against COVID-19 lessens the risk of serious illness or death from COVID-19 such
that the threat of the pandemic, even combined with pre-existing medical conditions, does not
constitute an extraordinary and compelling reason for compassionate release."  See United States
v. Hannigan, No. CR 19-373, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) (collecting cases).
And even if a defendant refuses to receive the COVID-19 vaccine, "[c]ourts now widely recognize
that a refusal to take preventative measures to protect oneself from COVID-19 undermines any
assertion that the risk of viral infection constitutes an extraordinary and compelling reason

justifying release." <u>United States v. Downer</u>, No. 11-0050, 2021 WL 2401236, at *2 (D. Md. June 11, 2021).

Here, Defendant's medical circumstances do not present an extraordinary and compelling reason justifying a reduction to his sentence under § 1B1.13(b)(1).  First, as the Government reports, all of Defendant's health conditions are being well-controlled by BOP with medication. (<u>See</u> Doc. No. 306 at 5.)  And second, because Defendant has refused to receive the COVID-19 vaccine and has thus failed to mitigate his increased risk of serious health complications should he contract COVID-19, this weighs against a finding of extraordinary and compelling circumstances.

Defendant argues that he refused to receive the COVID-19 vaccine because he is "allergic to [s]hellfish and its compounds and derivatives," and feared that he would have an allergic reaction to the vaccine.  (Doc. No. 316 at 3.)  He also asserts that FMC Devens, the facility in which he was housed at the time, did not have epinephrine, a medicine that counters allergic reactions, on hand to manage any allergic reaction he might have to the vaccine.  (<u>Id.</u> at 4.)  But as the Government points out, the Moderna COVID-19 vaccine, which was the type offered to Defendant, does not contain any shellfish parts, compounds, or derivatives.  (Doc. No. 317 at 3.) The Government also refuted Defendant's argument that FMC Devens does not have epinephrine, going so far as to contact BOP counsel at FMC Devens who assured the Government that it did have epinephrine.  (<u>Id.</u>)

Finally, FCC Butner, the facility in which Defendant is now housed, is currently reporting only two (2) open cases of COVID-19.  <u>See</u> <u>Inmate COVID-19 Data</u>, FED. BUREAU OF PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData (last visited Feb. 27, 2025).  With such a low number of cases, FCC Butner is not reporting or at immediate

risk of a COVID-19 outbreak. Accordingly, Defendant's medical circumstances do not present an extraordinary and compelling reason justifying a reduction to his sentence under § 1B1.13(b)(1).

### b.    Defendant's Sentence is Not "Unusually Long"

Defendant next argues that his sentence is unusually long, which is an extraordinary and compelling reason justifying a reduction to his sentence under § 1B1.13(b)(6). The Sentencing Commission recently added § 1B1.13(b)(6) to the Sentencing Guidelines, recognizing as a basis for compassionate release "the circumstance where a defendant has served more than 10 years of an 'unusually long sentence' that due to a 'change in law' would be grossly disparate under current law." See U.S.S.G. § 1B1.13 (b)(6) (Nov. 1, 2023). But the Sentencing Commission's authority to add § 1B1.13(b)(6) to the list of extraordinary and compelling reasons warranting a reduction to a defendant's sentence was quickly challenged in cases such as Carter and Rutherford.[9]

In both Carter and Rutherford, the defendants filed motions for compassionate release, arguing that the First Step Act's nonretroactive amendment to 18 U.S.C. § 924(c), "the federal statute that forbids using or carrying a firearm in furtherance of drug trafficking or a crime of violence," resulted in them serving unusually long sentences under § 1B1.13(b)(6). See Rutherford, 120 F.4th at 362 (noting the defendant had been sentenced to nearly 42.5 years' imprisonment after he was convicted on two counts of violating § 924(c) but, if sentenced today, "he would [instead] be subject to a 14-year mandatory minimum sentence for his two § 924(c) convictions"); see also United States v. Carter, 711 F. Supp. 3d 428, 430 (E.D. Pa. 2024) (noting the defendant was serving consecutive 7-year, 25-year, and 25-year mandatory minimum sentences

---

[9]    As mentioned above, because Defendant relied on § 1B1.13(b)(6) in asserting that he is entitled to compassionate release since his sentence would be lower under current law, the Court stayed the case pending the Third Circuit's decisions in Carter and Rutherford. (See Doc. No. 343.)

for three violations of Section 924(c) when, if sentenced today, these violations would instead only result in three consecutive 7-year mandatory minimum sentences).

Considering these arguments, the Third Circuit Court of Appeals in <u>Rutherford</u> held that its prior decision in <u>United States v. Andrews</u> precluded the nonretroactive amendment to § 924(c) from being considered on a motion for compassionate release.[10]  <u>See Rutherford</u>, 120 F.4th at 378 ("[O]ur holding in <u>Andrews</u> was that the nonretroactive change to § 924(c), whether by itself or in combination with other facts, cannot be considered in the compassionate release eligibility context. We stand by that ruling today. When it comes to the modification of § 924(c), Congress has already taken retroactivity off the table, so we cannot rightly consider it.") (citing <u>United States v. Andrews</u>, 12 F.4th 255 (3d Cir. 2021)).

Here, the changes in law cited by Defendant are not extraordinary and compelling reasons justifying a reduction to his sentence under § 1B1.13(b)(6).  Defendant first argues that his sentence is unusually long under § 1B1.13(b)(6) due to a nonretroactive change made in the First Step Act to the mandatory minimum sentencing provisions in 21 U.S.C. § 841(b)(1).[11]  (Doc. Nos. 327, 335, 338.)  Section 841(b)(1) sets the mandatory minimum sentences for persons convicted of possessing with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, among other drug offenses.  <u>See</u> 21 U.S.C. § 841(b)(1).  Under current law, as amended by the First Step Act, if a person is convicted of such an offense, § 841(b)(1) provides that they are subject to a mandatory minimum sentence of 10 years.  <u>See</u> <u>id.</u>

---

[10]  In light of its decision in <u>Rutherford</u>, the Third Circuit summarily affirmed the District Court's decision in <u>Carter</u>, in which it held that § 1B1.13(b)(6) could not serve as a basis for compassionate release due to the Third Circuit's holding in <u>Andrews</u>.  <u>See</u> <u>Carter</u>, 2024 WL 5339852, at *1; <u>see also</u> <u>United States v. Carter</u>, 711 F. Supp. 3d 428, 436 (E.D. Pa. 2024).

[11]  Specifically, § 401 of the First Step Act modified the statutory penalties set forth in 21 U.S.C. § 841(b)(1).  <u>See</u> First Step Act, § 401(c), 132 Stat. 5221 (Dec. 21, 2018).

But if that person has previously been convicted of a serious drug felony or serious violent felony, the mandatory minimum increases to 15 years. See id. However, before the enactment of the First Step Act in 2018, a person with a pervious serious drug or violent felony conviction was subject to a mandatory minimum sentence of 20 years, rather than today's 15 years. (See Doc. No. 327 at 2.)

As mentioned above, Defendant was sentenced in 2016 for conspiracy to possess five kilograms or more of cocaine with intent to distribute. (Doc. No. 306 at 1.) However, when sentenced, he had a prior conviction for "conspiracy to possess with intent to distribute cocaine and attempting to possess with intent to distribute cocaine." (Id.) As such, he was subject to and received the 20-year, or 240-month, mandatory minimum sentence prescribed by § 841(b)(1) for persons with a prior serious drug conviction. In his Motions for Compassionate Release, Defendant correctly recognizes that, if sentenced today, he would only be subject to a 15-year mandatory minimum sentence under § 841(b)(1). In this regard, Defendant argues that his 20-year, or 240-month sentence, is unusually long. (See Doc. Nos. 327, 335, 338.)

But § 401(c) of the First Step Act, the specific section of the Act that modified the statutory penalties set forth in 21 U.S.C. § 841(b)(1), explicitly states that "[t]his section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act, § 401(c), 132 Stat. 5221 (Dec. 21, 2018) (emphasis added). In other words, the amendment to § 841(b)(1) is nonretroactive, meaning its changes do not apply to sentences that had already been imposed by December 21, 2018, the date the First Step Act was enacted. And Defendant's sentence under § 841(b)(1) was imposed on January 6, 2016, well before the First Step Act's enactment. (See Doc. No. 306.) Thus, under the Third Circuit's

decisions in <u>Rutherford</u> and <u>Andrews</u>, because "Congress has already taken retroactivity off the table" with respect to the amendments to § 841(b)(1), this change in law "cannot be considered in the compassionate release eligibility context." <u>See</u> <u>Rutherford</u>, 120 F.4th at 378.

Second, Defendant argues his sentence is unusually long under § 1B1.13(b)(6) due to Amendment 821 to the Sentencing Guidelines, "a retroactive provision that (a) created a new two-offense-level reduction for certain offenders who present zero [(0)] criminal history points, and (b) altered the treatment of 'status points' for commission of an offense while subject to a criminal justice sentence." (Doc. No. 339 at 5.) But, while this amendment is retroactive, it is inapplicable to the present case. When sentenced in 2016, Defendant had eight (8) criminal history points, meaning the change in Amendment 821 concerning offenders with zero (0) criminal history points does not apply to him. (<u>See</u> <u>id.</u>) And while Defendant did have two "status points" when he was sentenced that he would not receive today due to the change in Amendment 821 altering the treatment of such status points, the loss of these two status points would not change his guideline range because, as a career offender, he was automatically placed in the highest criminal history category. (<u>See</u> <u>id.</u>) As such, because the changes made in Amendment 821 have no bearing on Defendant's sentence, his sentence is not "grossly disparate under current law" and is thus not an extraordinary and compelling reason justifying a reduction to his sentence under § 1B1.13(b)(6).

### c.    Defendant's Change in Family Circumstances Do Not Warrant a Reduction to His Sentence

Third, Defendant asserts that a change in his family circumstances is an extraordinary and compelling reason warranting a reduction to his sentence under § 1B1.13(b)(3). Specifically, he describes how his wife has been diagnosed with Bell's Palsy, causing the left side of her body, "from her face through her left arm," to become paralyzed. (Doc. No. 327 at 2.) He also explains how their daughter, who would be the wife's primary caregiver, is currently in Ghana, Africa. (<u>Id.</u>)

But Defendant does not claim that this daughter is the only person who can serve as the wife's primary caregiver. And the Government points out that the presentence report "identified numerous other family members of [Defendant] who resided near him and his wife, including another child." (Doc. No. 329 at 6 n.2.) Without any information or documentation claiming Defendant is the only available caretaker for his wife, her diagnosis with Bell's Palsy, while unfortunate, is not an extraordinary and compelling reason justifying a reduction to his sentence under § 1B1.13(b)(3). See, e.g., United States v. Rooks, No. 21-cr-038 & 21-cr-043, 2022 WL 267899, at *6 (E.D. Pa. Jan. 28, 2022) ("In relation to a motion for compassionate release grounded on the claim a defendant is the sole person available to provide care for their minor child, a defendant typically must establish that all other potential caregivers for their minor child are incapacitated.")

### d. Defendant's Rehabilitation Does Not Warrant a Reduction to His Sentence

Finally, Defendant argues that he is rehabilitated, and that this rehabilitation is an extraordinary and compelling reason warranting a reduction in his sentence. (Doc. No. 335 at 19-21.) But Congress has explicitly stated "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). For this reason, rehabilitation is not an extraordinary and compelling reason for reduction of Defendant's sentence.

### 3. Section 3553(a) Sentencing Factors Weigh Against a Reduction to Defendant's Sentence

In addition to not demonstrating an extraordinary and compelling reason for a reduction to Defendant's sentence, the relevant § 3553(a) factors also weigh against such a reduction. First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics. See § 3553(a)(1). As stated above, Defendant is serving a sentence for "conspiracy

to possess five kilograms or more of cocaine with intent to distribute, in violation of 21 U.S.C. § 846." (Doc. No. 306 at 2-3.) He had previously been convicted of the same crime in the Middle District of Florida. (Id.) The Government also notes the following:

> [D]efendant has a lengthy record of criminal conduct and failure to abide by court supervision, including the commission of this offense while on supervised release for his prior federal conviction [in the Middle District of Florida]. . . . He even committed [t]his prior federal drug offense in the Middle District of Florida while on parole for a New Jersey state sentence for a drug offense. Even more concerning than his prior federal and state drug convictions, and his commission of both offenses while under court supervision, the defendant has prior convictions for aggravated assault, unlawful possession of a weapon, and possession of a weapon for unlawful purposes from a case originating in New Jersey. In that case, the defendant in 1989 shot his victim five times at point-blank range with a .38 caliber revolver.

(Id. at 14.) Based on this history, there is no assurance that Defendant would abstain from criminal activity if he were granted compassionate release.

The Court has also considered whether Defendant's release would reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him. See § 3553(a)(2)(A)-(C). Defendant has served less than half of his 264-month sentence. The magnitude of Defendant's crime warrants the sentence he received and his release at this point would neither reflect the seriousness of his offense, promote respect for the law, provide just punishment, afford adequate deterrence, nor protect the public from further crimes Defendant may commit.

Lastly, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. See § 3553(a)(6). Defendant received the mandatory minimum sentence, which Congress created to address sentencing disparities. To reduce Defendant's sentence would not reflect the Sentencing Commission's goal of avoiding unwarranted sentence disparities among similarly situated

defendants and ensuring consistent punishment for similar offenses.  Therefore, none of the applicable § 3553(a) factors favor Defendant's release.

Accordingly, because the Court has concluded, <u>supra</u>, that Defendant has not presented extraordinary and compelling reasons justifying a reduction to his sentence and because the § 3553(a) sentencing factors weigh against his release, Defendant's Motions for Compassionate Release Compassionate (Doc. Nos. 299, 301, 327, 335, 338) will be denied.[12]

### B.      Defendant's Motion for Appointment of Counsel Will Be Denied

Defendant also has a pending Motion for Appointment of Counsel, seeking an attorney to represent him on his Motions for Compassionate Release under 18 U.S.C. § 3006A.  (Doc. No. 334.)  "[A] defendant does not have a constitutional right to appointment of counsel when seeking compassionate relief."  <u>United States v. Dorsey</u>, 520 F. Supp. 3d 681, 683 (E.D. Pa. 2021).  A defendant also has no statutory right to appointment of counsel when seeking compassionate release, but the Criminal Justice Act does outline "criteria to determine when financially eligible persons are entitled to representation."  <u>Id.</u> (citing 18 U.S.C. § 3006A(a)(1)).

When determining whether to appoint counsel, a court should "assess whether the [defendant's] case has some arguable merit in fact and law."  <u>Montgomery v. Pinchak</u>, 294 F.3d 492, 498-99 (3d Cir. 2002).  If the court finds merit, it must then consider several factors (the "<u>Tabron</u> factors") identified by the Third Circuit, including:  (1) the defendant's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the defendant to pursue investigation; (4) the

---

[12]  Because the Court concludes no extraordinary and compelling reasons warrant a reduction in Defendant's sentence and that the § 3553(a) sentencing factors weigh against his release, the Court need not address whether the reduction is consistent with the policy statement found in U.S.S.G. § 1B1.13.  <u>See</u> U.S.S.G. § 1B1.13(a).

defendant's capacity to retain counsel on his or her own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses.  Id. at 499 (citing Tabron v. Grace, 6 F.3d 147, 155-57 (3d Cir. 1993)).

Here, Defendant's claims for compassionate release do not fall within any of the categories noted in § 3006A and he does not meet any of the six Tabron factors.  First, as demonstrated by the five pending Motions for Compassionate Release, Defendant is capable of presenting his own case.  (See Doc. Nos. 299, 301, 327, 335, 338.)  Second, the legal issues presented in these Motions are not particularly difficult.  Third, no factual investigation is necessary.  Fourth, Defendant has demonstrated his capacity to retain counsel on his own behalf, and, in fact, has hired several attorneys to help represent him since the filing of his first Motion for Compassionate Release in 2021.  (See Doc. No. 299 at 1 ("I hired private counsel . . . ."); Doc. No. 301 ("My private Attorney . . . has attempted to secure medical records to perfect Compassionate Release Motion . . . ."); Doc. No. 327 ("My family was eventually forced to hire a different attorney . . . who acted autonomously on my behalf . . . .").)  Fifth, this case does not turn on credibility determinations.  And sixth, the case does not require testimony from expert witnesses.  Accordingly, Defendant's Motion for Appointment of Counsel (Doc. No. 334) will be denied.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motions for Compassionate (Doc. Nos. 299, 301, 327, 335, 338) will be denied.  Additionally, Defendant's Motion for Appointment of Counsel (Doc. No. 334) will be denied.  An appropriate Order follows.